UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS JEFFERSON CAIN, III,

       Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

                             /

Case No. 1:14-cv-463
Hon. Hugh W. Brenneman, Jr.

# OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for Supplemental Security Income (SSI). The decision will be reversed and remanded for an award of benefits.

Plaintiff was born on December 23, 1981 (AR 170).[1] He alleged a disability onset date of June 1, 2006, filing his application for SSI on November 1, 2011 (AR 11, 170). Plaintiff earned a GED and stated that he had previous work as a part hanger for a painting business (AR 175). Plaintiff identified his disabling conditions as a back injury, sickle cell anemia, depression and anxiety (AR 174). An Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on November 8, 2012 (AR 11-21). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

### I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of

not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since his SSI application date of November 1, 2011 (AR 13). At the second step, the ALJ found that plaintiff had severe impairments of: hemoglobin SC disease; schizoaffective disorder; panic disorder; and a personality disorder (AR 13). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 13). The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except he is limited to occasional climbing of ramps and stairs, but never climbing ladders, ropes, or scaffolding; he can occasionally balance, stoop, crouch, crawl, and kneel; he should have only occasional exposure to extreme heat and cold, humidity, vibration, and rare, defined as 5% or less, exposure to hazards; he is limited to simple routine and repetitive tasks; he is limited to occasional and superficial interaction with others; he requires low stress work, defined as occasional changes in work setting, occasional use of judgment, occasional decision making, and no production paced work or quotas.

(AR 15). The ALJ also determined that plaintiff has no past relevant work (AR 19).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the sedentary exertional level in the national economy (AR 20). Specifically, plaintiff could perform the following unskilled work in Michigan: final assembler of optical goods (200 jobs); and bench hand (250 jobs) (AR 20). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, since November 1, 2011, the date the application for SSI was filed (AR 21).

### III. ANALYSIS

Plaintiff has raised four issues on appeal.

### A. The ALJ committed reversible error by not properly weighing the opinion of plaintiff's treating psychiatrist.

Plaintiff contends that the ALJ failed to properly weigh the October 4, 2012 mental RFC form prepared by his treating psychiatrist, V. F. Vasquez, M.D. (AR 402-04). A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and

(2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 416.927(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Dr. Vasquez' opinion stated that plaintiff was being treated for schizoaffective disorder and panic disorder with agoraphobia "which interferes with his daily function" (AR 402). The doctor found that plaintiff had extreme restrictions in his ability to interact appropriately with the public, supervisors and co-workers (AR 403). In addition, the doctor stated that plaintiff had marked restrictions in the ability to make judgments on simple work-related decisions, to understand and remember complex instructions, to carry out complex instructions, and to make judgments on complex work-related decisions, and had a moderate restriction in his ability to understand and remember simple instructions, and to carry out simple instructions (AR 402). The doctor also stated that plaintiff "struggles with paranoia and has a hard time working with people and trust issues thinking [sic] negative towards all people" (AR 403). Finally, Dr. Vasquez stated that plaintiff had "impaired capacity for conceptual thinking" and all of these limitations had been present since at least August 12, 2011 (AR 403).

The ALJ reviewed Dr. Vasquez' opinion as follows:

> I turned to the medical source statement provided by Dr. Vasquez, with CMH, and afforded the review partial weight. (Ex. 15F). I gave great weight to the diagnoses of the claimant's mental health issues, and adopted them as severe impairments, because they are consistent with the treating record. (Exs. 1F; 9F; 13F). I gave little weight to the severity [sic] because the severity attributed to his symptoms did not correlate with treatment records, and although the records show

6

> GAF scores in the high 40's and low 50's, his mental status examination observations often show he was pleasant and cooperative, with appropriate grooming, hygiene, and no evidence of psychotic thought processes, although his speech was soft, withdrawn, and nervous. (Ex. 1F/3, 10, 12; 9F/1, 3, 5, 8; 13F/1). I did, however, conclude that the opinion indicated severe symptoms for these impairments, and I adopted non-exertional modifications to accommodate the claimant in the workplace.

(AR 17).

While the ALJ disagreed with Dr. Vasquez's opinions regarding the severity of plaintiff's symptoms, she did not address the doctor's opinions set forth in the medical source statement (AR 402-04). In addition, while the ALJ concluded that plaintiff's symptoms "did not correlate with the treatment records," this conclusion did not address certain treatment notes which reflect that plaintiff: had perceptual disturbances (AR 224, 366); had auditory hallucinations (sometimes telling him "to do bad things" or "to hurt other people") (AR 231, 233, 359, 361, 363, 393); and had visual hallucinations (AR 233). Such records could support Dr. Vasquez's opinion that plaintiff struggles with paranoia, has a hard time working with people, and has an impaired capacity for conceptual thinking (AR 403). The Court notes that the references to plaintiff's perceptual disturbances, auditory hallucinations and visual hallucinations appear in the exhibits cited by the ALJ (AR 17). Based on this record, the ALJ failed to give good reasons for the weight assigned to Dr. Vasquez' opinions. *See Wilson*, 378 F.3d at 545.

In addition, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). Here, the Court cannot trace the ALJ's reasoning with respect to her evaluation of Dr. Vasquez's opinions. Typically, the Court would order a sentence four remand pursuant to 42 U.S.C. § 405(g) to remedy this error. However, a sentence four remand is

7

unnecessary because even if the Commissioner had articulated good reasons for the weight assigned to Dr. Vasquez's opinion, the decision is fatally flawed due to the lack of a significant number of jobs in the national economy which plaintiff can perform. *See* discussion in § III. D, *infra*.

> **B. The ALJ committed reversible error by failing to consider that plaintiff could not comply with his medical regime due to a lack of financial resources.**

Plaintiff claims that the ALJ erred in evaluating his credibility because he could not afford medical treatment. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

Plaintiff contends that the ALJ rejected his subjective complaints without considering his ability to afford treatment contrary to SSR 96-7p,[2] which instructs an ALJ not to draw inferences about a claimant's credibility based upon the failure to obtain medical treatment without first considering the claimant's explanation for that failure:

> [T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the individual may provide insight into the individual's credibility. For example: . . .
>
> > * The individual may be unable to afford treatment and may not have access to free or low-cost medical services. . . .

SSR 96-7p, 1996 WL 374186 at *7-8 (July 2, 1996).

The record reflects that the ALJ inquired about plaintiff's ability to afford treatment at the administrative hearing, at which time plaintiff testified: that he received food stamps; that he had no insurance; that he was denied Medicaid; and that his "bills just keep piling up" (AR 32-33). When the ALJ noted that plaintiff was receiving some medical care, plaintiff's attorney advised the

---

[2] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1). While SSR's do not have the force of law, they are an agency's interpretation of its own regulations and "entitled to substantial deference and will be upheld unless plainly erroneous or inconsistent with the regulation." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 498 (6th Cir. 2006).

ALJ that "someone's taking care of [plaintiff]" through either Hackley Community Care and/or the Community Mental Health in Muskegon (AR 33).

In her decision, the ALJ found that plaintiff's allegations regarding his alleged disability were not credible based on a number of factors:

> In addition to the lack of substantiating medical evidence, the claimant's allegations of disability are not credible in light of inconsistent statements. In particular, the claimant's daily activities fail to show an individual who is incapable of all work activity. During testimony, the claimant testified that he never had a driver's license, but the claimant's examiner, which he visited in 2012, specifically noted that a copy of the claimant's driver's license was obtained when the physician's practice obtained informed consent for the examination. (Ex. 11F/3). In addition, the record shows several instances in which the claimant is instructed to return to the mental health clinic before he runs out of medication, but he does not return, and is consistently off his medications when he returns for checkups. Likewise, the claimant made the decision to discontinue hydroxyurea, ostensibly so he would be able to help conceive a child, which lead me to conclude both that the claimant's physical symptoms were not so severe that he absolutely needed the treatment, and that he views himself as physically capable of fathering a child. I determined that these choices indicated a greater level of ability than the claimant asserted, and afforded his symptom severity a reduced level of credibility. Moreover, the claimant has spent significant period of time incarcerated, yet there are no records of his treatment, if any, during those incarcerations, which, when combined with the fact that the claimant got his GED while in jail, lead me to decide that his mental health impairments lacked the degree of wholesale disability that he self-reported and described during testimony.

(AR 19).

The Court concludes that there is no compelling reason to disturb the ALJ's credibility determination. *See Smith*, 307 F.3d at 379. The record reflects that while the ALJ drew an inference that plaintiff was not credible for failing to obtain medication, she investigated his ability to obtain medical treatment at the administrative hearing, and was advised that plaintiff had access to treatment. In addition, the ALJ listed a number of other reasons for discounting plaintiff's credibility, e.g., plaintiff's inconsistent statement regarding his driver's license, plaintiff's unilateral

decision to discontinue medication, and the apparent lack of treatment deemed necessary during the significant period of time plaintiff was incarcerated (AR 19). Accordingly, plaintiff's claim of error will be denied.

> **C. The ALJ committed reversible error by failing to ask accurate hypothetical questions of the vocational expert.**

Plaintiff contends that the ALJ's hypothetical question posed to the vocational expert (VE) was inaccurate because it failed to properly address the limitations set forth in Dr. Vasquez's RFC assessment. Plaintiff's Brief at p. ID# 459 (docket no. 13).[3] An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals").

---

[3] Plaintiff also notes in passing that the VE failed to address the pain associated with sickle cell anemia, pointing out that his treating hematologist, Dr. Batts, confirmed that plaintiff suffered from sickle cell anemia which, by definition, is "characterized by arthralgia, acute attacks of abdominal pain, ulcerations of the lower extremities, [and] sickle-shaped erythrocytes in the blood[.]" Plaintiff's Brief at p. ID# 457 (docket no. 13). While plaintiff suggests that the ALJ did not properly evaluate Dr. Batts' opinion, he did not include this alleged error in his statement of errors. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, the Court deems this argument waived.

11

As discussed, *supra*, the ALJ did not properly evaluate Dr. Vasquez's RFC assessment. Typically, the Court would order a sentence four remand pursuant to 42 U.S.C. § 405(g) to remedy this error. However, it is unnecessary in this instance to re-evaluate the RFC on remand, because the Court also finds the decision is fatally flawed due to the lack of a significant number of jobs in the national economy which plaintiff can perform. *See* discussion in § III. D, *infra*.

### D. The ALJ did not have substantial evidence to support her finding that there were a significant number of jobs that plaintiff could perform.

At step five of the sequential evaluation, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that can accommodate plaintiff's residual functional capacity established above, and his vocational profile. *James, supra,* at 474. The ALJ found that plaintiff was not disabled, asserting he could perform work that exists in significant numbers in the national economy (AR 20-21). The ALJ's decision was based upon the VE's testimony that a person with plaintiff's RFC could work as either a final assembler of optical goods (200 positions in Michigan and 6,600 positions nationally) or a bench hand (250 positions in Michigan and 5,800 positions nationally) (AR 20, 64). Plaintiff contends that the 450 positions identified by the ALJ do not constitute a significant number of jobs for purposes of determining whether other work exists in the national economy at step five of the sequential evaluation.

The regulation which explains the term "Work which exists in the national economy" provides as follows:

> (a) General. We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. It does not matter whether --
>
> (1) Work exists in the immediate area in which you live;

>     (2) A specific job vacancy exists for you; or
>
>     (3) You would be hired if you applied for work.
>
>     (b)  How we determine the existence of work.  Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications.  Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered work which exists in the national economy.  We will not deny you disability benefits on the basis of the existence of these kinds of jobs.  If work that you can do does not exist in the national economy, we will determine that you are disabled.  However, if work that you can do does exist in the national economy, we will determine that you are not disabled.

20 C.F.R. § 416.966.  In the often-cited decision in *Hall v. Bowen*, 837 F.2d 272 (6th Cir. 1988), the Sixth Circuit addressed how the court should evaluate whether a significant number of jobs exist under the regulations.  Ultimately, the Sixth Circuit concluded that 1,350 to 1,800 jobs in the Dayton, Ohio, area constituted a significant number of jobs under the facts of that case.  *Hall*, 837 F.2d at 275.  In reaching its determination, the court observed that there is no "magic number" that represents a significant number of jobs, and that "[t]he decision should ultimately be left to the trial judge's common sense in weighing the statutory language as applied to a particular claimant's factual situation."  *Id.*  The judge may consider factors such as: vocational expert's testimony; the reliability of the claimant's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; and the types and availability of such work.  *Id.*

The gist of plaintiff's claim is that the 450 positions identified by the ALJ in Michigan is too small and that "there is likely no case which has allowed such a tiny number of jobs to be sufficient."  Plaintiff's Brief at pp. ID## 460-61.  In support of this claim, plaintiff relies on *Waters v. Secretary of Heath and Human Services*, 827 F. Supp. 446 (W.D. Mich. 1992), for its proposition that in this district, 1,000 jobs spread throughout Michigan was not a significant number

of jobs under the regulations. The Court does not find that *Waters* particularly applicable in this action.[4]

Nevertheless, the Court finds that plaintiff cannot perform work which exists in the national economy as required by 20 C.F.R. § 416.966. Both the ALJ and the VE recognized that here the 29-year-old plaintiff had no job history, having worked only briefly in June 2006 (AR 19, 34, 62, 180). The VE found that a person with plaintiff's limited physical abilities, mental abilities, and vocational qualifications could perform no more than 450 jobs in the entire State of Michigan (both the Upper and Lower Peninsula), with at least one of those jobs involving a specialized type of work (i.e., a final assembler of optical goods) (AR 64). *See* 20 C.F.R. § 416.966. In addition, the VE identified only 12,400 jobs in the entire nation which plaintiff could perform (amounting, on average, to only 248 jobs per state). Significantly, these jobs comprised only two categories of work. The VE could not identify any work that met the limitations set forth in the hypothetical question other than a final assembler of optical goods and a bench hand, advising the ALJ that "Your Honor, I do not have a third example that would match that hypothetical" (AR 64).[5] Under these circumstances, and in consideration of the factors set forth in *Hall*, the Court cannot find that the

---

[4] Contrary to plaintiff's contention, the court's opinion in *Waters* did not simply state that 1,000 jobs was not a significant number of jobs in Michigan. Rather, *Waters* involved an evidentiary issue regarding the location of jobs identified by the VE. In *Waters*, the VE testified that the plaintiff could transfer his skills to the job of a bench inspector and that 1,000 such jobs existed in Michigan, with the jobs concentrated in Michigan's Lower Peninsula in the aerospace and automotive industries. *Waters*, 827 F. Supp. at 449. Based on this testimony, the court found that there was "no evidence of work which exists in the national economy in regions other than the state of Michigan," that "the record does not establish that there is a single job which plaintiff can perform in the Upper Peninsula of Michigan [where he lived]." *Id.*

[5] Indeed, considering that plaintiff had no work experience, and a host of problems, even the final assembler of optical goods category is suspect.

mere 450 jobs identified here constitutes work that exists in the national economy that plaintiff can perform. Accordingly, this matter will be reversed and remanded for an award of benefits.

### IV.  CONCLUSION

For the reasons discussed, the Commissioner's decision will be **REVERSED and REMANDED** for an award of benefits based upon plaintiff's November 1, 2011 application for SSI. A judgment consistent with this opinion will be issued forthwith.


Dated:  July 16, 2015                                    /s/ Hugh W. Brenneman, Jr.
                                                         HUGH W. BRENNEMAN, JR.
                                                         United States Magistrate Judge